IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 09–cv–01412–MSK–KMT


JOE LOUIE MENDOZA,

     Applicant,

v.

J. M. WILNER, Warden

     Respondent.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

     This is a habeas corpus proceeding filed *pro se* by federal prisoner Joe Louie Mendoza under 28 U.S.C. § 2241. (Doc. No. 2, filed June 17, 2009 [Appl.].)  Respondent filed his Response on November 20, 2009.  (Doc. No. 29 [Resp.].)  Applicant filed his Traverse on January 4, 2010.  (Doc. No. 31 [Traverse].)  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter was referred to this court for recommendation.  Based on the record contained herein, I recommend that the Application be DENIED and that this matter be dismissed with prejudice.

## I.    BACKGROUND

At the time this case was filed, Applicant Joe Louie Mendoza, was in the custody of the United States Bureau of Prisons (BOP) at the Federal Correctional Institute (FCI) Florence, Colorado.  (Appl. at 1.)  He has since been moved to FCI Safford, Arizona.  (Resp., ¶ 1.) Applicant is serving a 200-month sentence imposed by the United States District Court for the Western District of Arkansas for Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(A)(1).  (*Id.*, ¶ 1.)  His projected release date is September 13, 2013, via good-conduct time release.  (*Id.*, ¶ 1 and Ex. A-1, Attach. A at 1.)

Applicant initiated this action on June 17, 2009, by filing a *pro se* Application for Writ of Habeas Corpus Pursuant to 28 U.S.C.§ 2241, asserting his due process rights were violated in connection with a June 10, 2008 disciplinary hearing.  (Appl. at 1–2.)  The disciplinary hearing at issue arose from a urinalysis attributed to Applicant which tested positive for the presence of opiates-morphine.  (*Id.* at 10; Resp., ¶ 3 and Ex. A-1, Attach. B at 1.)

On April 4, 2008,[1] Applicant provided Correctional Officer (CO) Medina with a urine specimen in a bottle labeled with the number BOP0000310748.  (Resp.,¶ 3; Traverse at 33.)  On May 7, 2008, the National Toxicology Laboratory sent confirmation to the prison, which was received by CO Marroquin, that specimen BOP0000310748 tested positive for the presence of "opiates-morphine."  (Resp., ¶ 3; Traverse at 34.)  On that same day CO Marroquin received a

---

[1] Although the Response states Applicant's urine specimen was obtained on April 4, 2004 (Resp., ¶ 3), the record otherwise shows that Applicant provided his urine specimen on April 4, 2008.  (*See* Resp., Ex. A-1, Attach. E [DHO Report] at 1, also provided as Traverse, Ex. 9.) Therefore the Recommendation will use the April 4, 2008 date to refer to Applicant's urinalysis.

memorandum from Health Services confirming that Applicant was not on any medication that would have produced a positive urinalysis result on urine collected on April 4, 2008. (Traverse at 35.) CO Marroquin wrote an Incident Report that same day, May 7, 2008. (Traverse, at 35; Resp., Ex. A-1, Attach. B at 1.) Lieutenant Broadhead, still on May 7, 2008, gave Applicant a copy of the Incident Report and advised him of his right to remain silent. (Traverse at 3; Resp. at 3 and Ex. A-1, Attach. B at 3.) Lieutenant Broadhead offered Applicant the opportunity to identify witnesses, but Applicant declined at that time. (Resp., Ex. A-1, Attach B. at 3.)

On May 12, 2008,[2] the Unit Disciplinary Committee (UDC) held an initial hearing and referred the matter to the Disciplinary Hearing Officer (DHO) for further hearing. (Resp., Ex. A-1, Attach. C.) Also on May 12, 2008, Applicant received and signed a "Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO)" and a notice of "Inmate Rights at Discipline Hearing." (Resp., Ex. A-1, Attachs. C and D.) The notice of hearing contained an advisement to Applicant that he was being charged with a violation of Code No. 112, Use of Any Narcotic. (Resp., Ex. A-1, Attach. C.) The notice further advised Applicant of his rights to call witnesses and have a staff representative at the DHO hearing. (*Id.*) The accompanying notice of rights advised Applicant, among other things, of his right to have a copy of the charges against him "at least 24 hours prior to appearing before the Discipline Hearing Officer," the "right to call

---

[2] Although the Response states the UDC hearing happened on June 12, 2008 (Resp., ¶ 2), the record shows that the initial UDC hearing happened on May 12, 2008. (Resp., Ex. A-1, Attach. B at 2.)

witnesses . . . and to present documentary evidence" on his behalf, and the right to receive a copy of the "DHO's disposition in writing."  (Resp., Ex. A-1, Attach. D.)

On the notice of hearing, Applicant requested "Ms. Mottaghi"[3] as his staff representative and stated that he wished to call inmate "Mendoza from D-Unit" to serve as a witness.  (Resp., Ex. A-1, Attach. C.)  Applicant asserts that he asked that Mottaghi interview three additional inmates in connection with his hearing but did not list any of the three as witnesses.  (Appl. at 9.)

DHO Eaton held Applicant's disciplinary hearing on June 10, 2008 and issued a written report on June 29, 2008.  (*See* DHO Report.)  The DHO found that Applicant's staff representative obtained a statement from Applicant's witness, "Mendoza from D-Unit," but discounted any proposed testimony from the witness since the witness stated he did not want to be involved and provided no further information.  (*Id.* at 1.)  The DHO considered the written report from the National Toxicology Laboratory which stated that specimen BOP0000310748 tested positive for opiates-morphine and that the chain of custody for drug analysis showed that the specimen number referenced by the laboratory was the same as on the bottle of the urine specimen provided by Applicant and which Applicant handed to CO Medina.  (*Id.*)  The DHO also considered a memorandum from medical staff which stated that Applicant had not received any medication from the pharmacy that would result in Applicant providing a positive drug test for opiates-morphine.  The DHO further considered Applicant's statement that he thought a

---

[3] Although the requested staff representative's name on the Notice of Discipline Hearing is spelled "Mottahgi" (Resp., Ex. A-1, Attach. C), the correct spelling of this name, as written in the record, is "Mottaghi."  (Resp., ¶ 5 and DHO Report at 1, 2.)

"mistake was made because of [sic] the chain of custody wasn't followed." (*Id.*)  At the

conclusion of the hearing, the DHO found that Applicant committed the prohibited act of Use of

Any Narcotic, a violation of Code 112.  (*Id.* at 2.)  The DHO explained that she considered

Applicant's statement, but gave greater weight to the toxicology report and the chain of custody

form, which was signed by Applicant.  (*Id.* at 3.)  The DHO also gave "some weight" to

Applicant's decision to neither admit nor deny that he provided a positive urine specimen.  (*Id.*)

The DHO also gave "some weight" to the fact that Applicant did not provide any evidence to

support a finding that no prohibited act was committed.  (*Id.*)  After finding that Applicant had

committed the offense, the DHO disallowed forty days of good-conduct time credit, placed

Applicant in Disciplinary Segregation for thirty days, and decreed Applicant would lose social

visiting privileges for six months, followed by six months of visitation limited to only family

visits.  (*Id.*)

Applicant seeks expungement of the disciplinary record.  (Appl. at 5.)  He raises six due

process claims and one equal protection claim:  Claim One alleges that CO Medina failed to

write and give Applicant an Incident Report within twenty-four hours after staff became aware

of the incident  (*id.* at 3);  Claim Two alleges CO Medina failed to follow proper BOP procedure

in obtaining and handling Applicant's urine specimen (*id.*); Claim Three alleges Applicant was

denied the right to present documents and to call witnesses in his defense at the DHO hearing

(*id.* at 4); Claim Four alleges Applicant was denied an initial hearing by the UDC within

seventy-two hours after staff became aware of the incident (*id.* at 6); Claim Five alleges

Applicant's equal protection rights were violated by the failure noted in Claims One and Four

while other inmates similarly situated were afforded those rights (*id.*); Claim Six alleges

Applicant was denied a staff representative to help him prepare for the hearing (*id.*); and Claim

Seven alleges Applicant was denied an impartial decision maker at his DHO hearing (*id.*).

## II.    *LEGAL STANDARDS*

### A.    **Pro Se** *Applicant*

Applicant is proceeding *pro se*.  Therefore the court must liberally construe his pleadings.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).  However, even as a *pro se* litigant, Applicant is required to comply with the fundamental

requirements of the rules of procedure.  *Wellington v. Mukasey*, No. 07-3052, 2008 WL 276047,

at **2 (10th Cir. Feb. 1, 2008) (citing *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir.

1994)).  The court will carefully weigh the need for Applicant to present constitutional claims

against any procedural defects caused by Applicant's *pro se* status.  *See Clark v. Tansy*, 13 F.3d

1407, 1409 (10th Cir. 1993).

### B.    *Jurisdiction—28 U.S.C. § 2241*

An application for habeas corpus relief may be filed when an applicant alleges he "is in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.§

2241(c)(3).  The statute permits a prisoner to attack the execution of his sentence as it affects the

fact or duration of his confinement.  *See Overturf v. Massie*, 385 F.3d 1276, 1278 (10th Cir.

2004).  When an inmate challenges the fact or duration of his confinement, 28 U.S.C. § 2241 is

the proper jurisdictional basis.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (overruled on

other grounds by *Heck v. Humphrey*, 512 U.S. 477, 482 (1994)); *McIntosh v. United States*

*Parole Comm'n*, 115 F.3d 809, 811-12 (10th Cir. 1997). However, where a prisoner "attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions," jurisdiction is not proper under 28 U.S.C. § 2241, and his remedy is under the civil rights laws. *McIntosh*, 115 F.3d at 812 (quoting *Rhodes v. Hannigan*, 12 F.3d 989, 991 (10th Cir. 1993)). "A petition under 28 U.S.C. § 2241 . . . must be filed in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Here, Applicant correctly filed his Application pursuant to 28 U.S.C.§ 2241 in the District of Colorado where he was incarcerated at the time of filing.

### C.  *Due Process in Prison Disciplinary Proceedings*

Incarcerated persons are entitled to due process at any disciplinary hearing. Additionally, prisoners have a constitutionally protected liberty interest in their earned good-conduct time. *Jackson v. Warden, Admin. Maximum, Florence, Colo.*, No. 96-1222, 1997 WL 158136, at *2 (10th Cir., April 2, 1997) ("It is true that federal inmates have a liberty interest in earned statutory good time credits."); *Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987).[4] However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with 1) written notice of the charges against him no fewer than twenty-four

_____

[4] *Brown* cites 18 U.S.C. § 4161, the now-repealed federal statute that created a right to good time credits for federal prisoners. The equivalent statute effective today is 18 U.S.C. § 3624.

hours in advance of the disciplinary hearing, 2) an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and 3) provision of a written statement by the fact finder of the reasons for the decision and the evidence upon which the fact finder relied. *Id.* at 563-66; *see also Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990).

In addition to the due process requirements under *Wolff*, there also must be some evidence to support a disciplinary conviction. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

> Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."

*Hill*, 472 U.S. at 455–56; *see also Mitchell*, 80 F.3d at 1445. The disciplinary decision will be upheld even if the evidence supporting the decision is "meager." *Mitchell*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

A review of Applicant's disciplinary proceeding on June 10, 2008 by this court is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell*, 80 F.3d at 1445; *see also Diaz v. McGuire*, No. 05-3149, 2005 WL 3036561, at **2-3 (10th Cir. Nov. 14, 2005) (stating that prison regulations are not designed to confer rights on inmates and the process which is due is measured by the Due Process Clause).

## III.    ANALYSIS

### A.    *Sufficiency of Evidence to Support Disciplinary Decision*

As a preliminary matter, in any due process review of a disciplinary decision, the court must consider whether the "some evidence" standard has been satisfied.  In the DHO Report, DHO Eaton indicated she listened to and considered the argument of Applicant that the chain of custody procedure for Applicant's urine sample was not followed correctly, including Applicant's belief the sample had not been sealed in his presence.  (DHO Report at 1.)  The DHO directly inquired of Applicant whether he had provided a positive urine specimen on April 4, 2008 and Applicant would neither admit nor deny the allegation.  The DHO reviewed the written report from the National Toxicology Laboratory, the Chain of Custody for Drug Analysis form, and a memorandum from Health Services.  The DHO made the following findings, among others

> The DHO relied upon the written report from the National Toxicology Laboratory which stated that specimen BOP0000310748 tested positive for Opiates, Morphine.  The DHO reviewed the chain of Custody for Drug Analysis to ensure that the specimen number referenced by the lab was the same as the sample provided by the inmate.  The DHO notes that you, inmate Mendoza, signed the form, certifying that you provided the specimen and the container was sealed with the tamper-proof seal in your presence; and you certified that the specimen number provided on the form and on the label affixed to the specimen container are the same.  The DHO considered a memorandum from medical staff dated 05-07-2008, that verifies you have not received any medication from the pharmacy which would result in a positive drug screen for Opiates, Morphine.

(*Id*. at 2-3.)  The DHO stated she considered Applicant's statement that he did not believe that the urine sample was sealed in his presence, but that she gave greater weight to the toxicology report and the chain of custody form than she did to Applicant's statement at the hearing.  (*Id.* at

3.)  As noted, the DHO also gave some weight to Applicant's decision to neither admit nor deny that he had provided the positive urine sample.  (*Id.*)

Applicant maintains that the failure to appropriately follow a chain of custody renders his specimen "unreliable" as evidence for his disciplinary hearing and therefore undermines the evidence relied upon by the DHO.  This is the same same argument he presented to the DHO and which the DHO considered at the hearing.  (Traverse at 7.)  Applicant asserts that the signature on the chain of custody form is "not applicant's name, nor is it the way applicant signs his name."  (*Id.* at 8.)  While Applicant contends that he did not finish signing the chain of custody form, he concedes that he began to sign form number BOP0000310748 (the same number as on the specimen jar) on the date the specimen was collected and the first letter of his signature was placed on the form by him.  (*Id.* at 4.)  Significantly, Applicant has never alleged, either at his hearing or as part of this proceeding, that the urine specimen which was tested by the National Toxicology Laboratory and marked BOP0000310748 was not his own.

Applicant further asserts now, although he failed to raise these issues at the June 10, 2008 hearing, that the National Toxicology Laboratory form is incomplete because it lacks a shipping date, air bill number, staff initials, name or signature as to who received the specimen, and a date as to when the laboratory received it.  (*Id.* at 9.)  Applicant also asserts there is no indication that the specimen bottle was sealed intact.  (*Id.*)

In order to support the loss of good time credits "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."  *Hill*, 472 U.S. at 455.  The Supreme Court explained that this standard of proof is

not demanding because due process "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457. A disciplinary finding can be upheld on even meager evidence, as long as the "record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

Even assuming for purposes of this review that Applicant's "signature" on the chain of custody form does not comport with Applicant's other known signatures, the undisputed evidence shows that the BOP number on Applicant's actual urine specimen ,which he provided and handed to CO Medina, and the number on the National Toxicology Laboratory report are the same. Further, the undisputed evidence was that Applicant signed the sealing strip on the specimen jar and partially signed the chain of custody form. (Traverse at 4.) Applicant has never directly disputed that the urine in the specimen jar was his own. This is enough to fulfill the "some evidence" standard of *Hill. See Easter v. Saffle*, No. 02-6044, 2002 WL 31528687, at **2 (10th Cir. Nov. 14, 2002) (holding a single urinalysis satisfies due process because it amounts to "some evidence"); *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) ("Positive urinalysis results based on samples that officials claim to be appellant's constitute some evidence of appellant's drug use."); *Peranzo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1988) ("Though the risk of false positives has not been entirely eliminated . . . use of the [drug positive] test results may be relied upon as sufficient evidence to warrant prison discipline under the standards of *Superintendent v. Hill*.").

Therefore, the DHO decision finding that Applicant had committed the prohibited act of Code 112, Use of Any Narcotics was supported by sufficient evidence to satisfy the requirements of Due Process.

**B.      *Claims Two and Seven***

Both Claims Two and Seven deal with the evidence presented in the disciplinary hearing on June 10, 2008 and DHO Eaton's analysis of the evidence and ultimate conclusion.

***1.      Claim Two***

In Claim Two, Applicant again asserts that CO Medina failed to follow proper prison procedures in obtaining and handling the urine specimen collected on April 4, 2008 from the Applicant and that, because the chain of custody procedure was not properly followed, the evidence was tainted and therefore insufficient to support the findings of the DHO.

Given that this Court has found the "some evidence" standard was satisfied, this court's review of Applicant's disciplinary proceeding is limited to whether the three steps mandated by *Wolff* were followed. The allegations in Claim Two do not touch on any of the three *Wolff* factors—the timing of the written notice given to Applicant, Applicant's ability to call witnesses or present evidence on his own behalf, or provision of the DHO's report and the reasons for her findings. Claim Two is, rather, a transparent attempt to re-open the proceedings for an unsanctioned *de novo* review by this court.

Therefore, Claim Two should be dismissed.

### 2. *Claim Seven*

In Claim Seven, Applicant asserts that DHO Eaton was not an impartial decision maker because she had allegedly told Applicant on April 8, 2008, that his classification score would be changing, stating, "Mendoza you know that your U.A. test are [sic] going to came [sic] back positive." (Appl. at 6.) While this Claim does not involve considerations of the first two *Wolff* factors, it may have some marginal relevance to factor three since it alleges DHO Eaton was not an impartial reviewer.

Applicant acknowledges that on April 4, 2008, CO Medina, who had collected the specimen from Applicant, advised him "that the initial confirmation reading of the urine specimen tested positive for opiates-morphine." (Traverse at 3, 13.) Thereafter, Applicant was placed in administrative segregation. (*Id.*) Therefore, it is reasonable that his case manager, who was at the time DHO Eaton, would be aware of the presumptive result of the urinalysis and the reason for Applicant's housing in administrative segregation instead of general population. Assuming for purposes of this analysis that DHO Eaton did make the comment that Applicant's urinalysis test would come back positive for drug use, there is nothing in the comment itself which foretells of any prejudice on the part of the DHO. Applicant's defense to the disciplinary charges did not in any way dispute that the urine sample in the bottle sent to the National Toxicology Laboratory had tested presumptively positive for opiates at the time of collection nor that the same sample had tested positive for opiates after full laboratory analysis. Instead, Applicant's defense was and is that the chain of custody procedure was not correctly followed by CO Medina thereby rendering the specimen and the results therefrom suspect to the point of

losing evidentiary value. This defense goes to the weight to be given to the evidence, not the DHO's conclusions therefrom. At the hearing the DHO clearly states that Applicant's defense and statements were considered in her determination. (DHO Report at 1.) The record shows that the DHO did consider the possibility of failure to maintain a pristine chain of custody on Applicant's specimen and gave the specimen and its laboratory analysis what weight she believed it deserved.

The DHO properly relied on the evidence before her at the hearing and the court has found that there is sufficient evidence supporting the DHO's conclusions. There are no grounds set forth by Applicant to support that the DHO was not impartial or that her decision was based on anything outside the record. Therefore, this court finds no merit in Claim Seven and this claim should be denied.

### C.     *Claims One, Four and Five*

Claims One, Four and Five all deal with the timing of notifications to Applicant of the incident report and the UDC hearing. Claim Five alleges that other inmates received disciplinary notifications in a different manner than did Applicant thereby constituting an Equal Protection violation.

#### 1.     *Claim One*

Applicant claims he did not receive an Incident Report within twenty-four hours of the time the staff became aware of the opiate-positive urinalysis, in violation of 28 C.F.R. § 541.15(a). (Appl. at 3.) This regulation states that "staff shall give each inmate . . . a written copy of the charges against the inmate, ordinarily within 24 hours of the time staff became aware

of the inmate's involvement in the incident." 28 C.F.R. § 541.15(a). An "incident" is a "violation of Bureau regulations." *See* § 541.14(a). Until prison staff determines there is a reasonable belief that a violation of Bureau regulations has been committed by an inmate there is no incident.

Applicant claims the staff became aware of the opiate-positive urinalysis on April 9, 2008, when the prison received the National Toxicology Laboratory report. Applicant states, therefore, that the twenty-four hour period began to run on April 9, 2008. Applicant did not receive an Incident Report until May 7, 2008. (Appl. at 3; Traverse at 3.) The DHO found that while the prison received the National Toxicology Laboratory report on April 9, 2008, this "report was routed through other staff for review" before Applicant's reporting officer received it. (DHO Report at 3.) The DHO further found that the Incident Report could not be written until the reporting officer received written confirmation from Health Services that Applicant was not prescribed any medication that would cause a positive urinalysis result. (*Id.*) The record shows the reporting officer received such confirmation from Health Services on May 7, 2008. (Traverse at 35; Resp., Ex. A-1, Attach. B at 1.)

This court agrees that in Applicant's case, until such confirmation was received, there was technically no incident to report and no charges to be perfected.[5] The court finds the

_____

[5] Applicant affixes to his Traverse documents from Surgery Center of Long Beach indicating he had surgery on February 8, 2008. (Traverse at 44-46.) Accordingly, evidence that he was not being prescribed opiates or other substances medically necessary would be required before any determination could be made that Applicant had violated the Code by using unprescribed or illegal substances.

twenty-four hour period began to run on May 7, 2008, the date prison staff knew that Applicant

had provided a urine sample that had tested positive for opiates and that there was no legal,

medical reason explaining the opiate-positive result.  The Reporting Officer wrote the Incident

Report on May 7, 2008 and CO Marroquin delivered the Incident Report to Applicant later that

same day.  (Resp., Ex. A-1, Attach. B at 1.)  Therefore, prison officials fully complied with the

notification requirements of § 541.15(a).

Even if Applicant had not received the Incident Report within twenty-four hours of the

date that staff became aware of the incident, Applicant's due process rights would not have been

violated because due process requires only that the inmate have no fewer than twenty-four hours

between receiving written notice of the charges against him, and the disciplinary hearing.  *Wolff*,

418 US 539 at 564.  The Tenth Circuit, along with other federal courts have consistently rejected

inmates' arguments based on violations of 28 C.F.R. § 541.15(a).  *See Dedrick v. Daniels*, No.

10-1183, 2010 WL 2926536, at *1 (10th Cir. July 28, 2010) (finding the twenty-four hour time

frame set forth in § 541.15(a) "aspirational, not mandatory"); *Barner v. Williamson*, No. 06-

3351, 2007 WL 1539359, at **2 n.5 (3d Cir. May 3, 2007) (stating inmate had not shown that §

541.15(a) creates a liberty interest or that its violation "necessarily abridges the constitutional

protections established in *Wolff*"); *Brown v. Rios*, No. 06-1210, 2006 WL 2666058, at **2 (10th

Cir. Sept. 18, 2006) (holding federal prisoner's allegations of due process violation due to prison

officials' noncompliance with § 541.15(a) lacks merit); *Stanko v. Rios*, No. 08-3102, 2009 WL

1066021, at *6 (D. Minn. April 20, 2009) (finding that § 541.15(a) does not require notice within

the twenty-four hour period and due process only requires an inmate receive notice of the

charges twenty-four hours before the disciplinary hearing); *Thomas v. Young*, No. 07-1625, 2007 WL 4374379, at *3 (W.D. La. Nov. 8, 2007) (holding even though federal prisoner's disciplinary hearing did not conform with the timing of § 541.15(a), prisoner was nevertheless afforded due process because he received the constitutional minimum under *Wolff*); *Sindez v. Gerlinski*, 252 F. Supp. 2d 144, 149 (M.D. Pa. 2003) (finding no prejudice where inmate received the incident report eight months after its preparation because he received it more than twenty-four hours in advance of the disciplinary hearing); *Homen v. Hasty*, 229 F. Supp. 2d 290, 296 (S.D.N.Y. 2002) (finding no concerns where prisoner received notice about charges more than four months after an incident). Applicant received written notice of the charge against him thirty-three days before his disciplinary hearing on June 10, 2008. (Resp., Ex. A-1, Attachs. B at 1 and E at 1.)

Therefore, Claim One is properly denied.

### 2. *Claim Four*

In Claim Four Applicant asserts that the BOP violated 28 C.F.R. § 541.15(b)[6] by failing to hold his UDC hearing within seventy-two hours after the staff became aware of the positive urinalysis on April 9, 2008, the date when the prison received the National Toxicology Laboratory report confirming the positive urinalysis result. (Appl. at 6.) As the court has previously addressed, the date of the "incident" triggering notification requirements was May 7, 2008, the date the staff had received both the laboratory results confirming that Applicant had

---

[6] Applicant cites to subsection (c). The correct subsection, however, is (b).

provided a urine sample that had tested positive for opiates and confirmation from Health Services that there was no medical reason why the urine should have tested positive.

Section 541.15(b) states, "Each inmate . . . is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident.  This three day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays."  Calculating from May 7, 2008, the initial UDC hearing took place within the seventy-two hour time provision in § 541.15(b).[7]

Even if the calculation were to be taken from April 9, 2008, the date the prison received the laboratory results, there would be no violation of Applicant's due process rights.  *See Brown*, 2006 WL 2666058, at *2 (relying on *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)) ("The process which is due under the United States Constitution is that measured by the Due Process Clause, not prison regulations.").  The due process requirements in *Wolff* do not include a specific time frame in which an initial hearing on a disciplinary matter must occur. *Thomas*, 2007 WL 4374379, at *9 (holding even though federal prisoner's initial disciplinary hearing happened outside the time frame of § 541.15(b), prisoner was not denied due process because the hearing followed *Wolff's* constitutional requirements).  As the language of § 541.15(b) indicates, the initial hearings happen *ordinarily* within three work days from the time staff is aware of the incident.  "Holding an initial hearing after that period does not necessarily

---

[7] May 7, 2008 fell on a Wednesday, and the UDC hearing was held on Monday, May 12, 2008.  As the calculation in § 541.15(b) excludes the day staff became aware of the inmate's involvement in the incident, as well as weekends and holidays, the Monday, May 12, 2008 initial UDC hearing fell within the three day period set out in § 541.15(b).

indicate noncompliance with the regulation." *Booth v. Patton*, No. 08-02-HRW, 2009 WL 1636391, at *3 n.1 (E.D. Ky. June 10, 2009); *see Howard v. Beeler*, No. 90-271, 1992 WL 67830, at *3 (N.D. Ill. March 24, 1992) ("Use of the phrase 'ordinarily' in the regulation implies that three days is more of a guideline than a hard and fast deadline.")

Claim Four, therefore, is properly denied.

### 3. *Claim Five*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see also Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 439). Any challenged disparate treatment must be the result of purposeful discrimination for an equal protection analysis to apply. *Harris v. McRae*, 448 U.S. 297, 323 (1980). To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

In order for an inmate in a disciplinary matter to state an equal protection claim, he must allege that prison officials either denied him a fundamental right or provided differential treatment based on a suspect classification. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995). If the inmate is not a member of a protected class and does not assert deprivation of a

fundamental right, the court must only determine whether the alleged discriminatory action has a rational basis. *Id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (noting that "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential" and considers only whether the treatment was "reasonably related to a legitimate penological purpose").

Applicant does not allege he was denied a fundamental right, or was provided differential treatment based on a suspect classification. (Appl. at 6.) To support his assertion that he was treated differently from other similarly situated prisoners, Applicant claims that four inmates were treated in a particularized manner with respect to alleged disciplinary incidents which he claims is different from the manner in which he was treated. First, Applicant claims that inmate Pollender, who provided a urine sample the same day Applicant's urine was collected, received an Incident Report within twenty-four hours after staff received the laboratory results showing Pollender's methamphetamine-positive urinalysis. (Traverse at 13, 53.) Second, Applicant states that inmate Martinez received "relief" because his UDC hearing fell outside the time frame recommended by 28 C.F.R. § 541.15(b). (*Id.* at 13.) Third, Applicant claims that disciplinary proceedings were dismissed against two inmates, Carajal and Sanchez, because the incident report incorrectly stated the time of the alleged incident. (*Id.* at 13, 55–60.)

Applicant does not offer documents to support his assertion that inmates Carajal and Sanchez received "relief" on any matter or hearing, nor does he state how each may be similarly situated to himself. As to inmate Pollender, there is no indication Pollender had any medical issues shortly before the urinalysis which would necessitate inquiry of medical personnel similar

to Applicant's situation. Further, Pollender confessed to using methamphetamine at the time of the collection of the specimen and stated to prison staff, "the stuff (white powdery substance) in the plastic bag that was found in my living cell belonged to me."[8] (Traverse, Ex. 10.) Given that Applicant in this case did receive timely UDC review in accordance with the time provisions of 28 C.F.R. § 541.15(b), he is not similarly situated to inmate Martinez rendering comparison to inmate Martinez irrelevant.

Even if the court were to conclude that Applicant was similarly situated to any of the other four inmates and that he was treated differently, there is a rational basis for this treatment as a result of Applicant's known medical history. There was a rational and appropriate basis why the reporting officer waited to write Applicant's Incident Report until he received appropriate confirmation from Health Services that Applicant had not been prescribed opiates or any opiate-like substance which would cause the opiate-positive laboratory result.

Accordingly, Claim Five alleging an equal protection violation is properly denied.

### D.     Claims Three and Six

Applicant's Third and Sixth Claims involve allegations that Applicant and his representative were deprived of the right to call witnesses and to view and utilize documents in this case and that as a result he was constructively deprived of his right to have a staff representative help him prepare for his hearing. (Appl. at 4.)

---

[8] It is undisputed that Applicant did not admit or confess that he used opiates which would cause him to deliver an opiate-positive sample.

Applicant listed "Mendoza from D-Unit" as his only requested witness on the Notice of Discipline Hearing in order to prove "that I did have surgery in Feb 2008." (Resp., Ex. A-1, Attach. C.) It is not disputed that Applicant's Staff Representative (SR) Mottaghi attempted to secure a statement from inmate Mendoza to present at the hearing but the inmate "declined to make a statement other than to state that he did not want to be involved." (DHO Report at 2.) It is also not disputed that the proposed witness would not have been allowed to personally attend the hearing in the special housing unit due to security reasons and the only way his testimony could be secured was through an interview statement. (*Id.*)

Applicant asserts that the witness SR Mottaghi interviewed was the "wrong preson [sic] with the same last name as the witness that applicant had requested." (Traverse at 12.) Applicant did not claim that this witness was the wrong witness during his DHO hearing, and provides no supporting evidence for this assertion. Applicant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110 (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)); *see also Williams v. Rice*, No. 98-1146, 1998 WL 863982, at *1 (10th Cir. 1998) (rejecting prisoner's conclusory allegations of factual dispute because they failed to state a constitutional claim); *Pina v. Wiley*, No. 05-00984, 2006 WL 3700627, at *3 (D. Colo. 2006) (rejecting prisoner's due process claim where prisoner's claim relied exclusively on conclusory allegations). This court notes that the testimony apparently to be provided by the correct inmate Mendoza was that Applicant underwent surgery in February 2008. Whether or not Applicant's alleged surgery could be verified by inmate Mendoza—or by medical records from the Surgery Center as he now

has done (Traverse at 44-46)—is completely immaterial in light of the fact that Health Services certified that Applicant had not been prescribed or provided with any medical substance which would have caused his urine to show positive for the presence of opiates. "A prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony 'would have affected the outcome of the case.'" *Brown v. Wyo. Dep't of Corr. State Penitentiary Warden*, No. 06-8095, 2007 WL 1492344, at *4 (10th Cir. May 23, 2007) (quoting *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993)).

In accordance with the strictures of *Wolff*, a prisoner is entitled to marshal his defenses by calling witnesses. *See Smith*, 899 F.2d at 946 (citing *Wolff*, 418 U.S. at 566.) "The scope of this right, however, is limited by the special requirements of the prison setting." *Id.* Prison officials must have the discretion to "refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* (quoting *Wolff*, 418 U.S. at 566.) Where a witness is not allowed to appear at the disciplinary hearing, a written witness statement satisfies the due process requirement. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007) (finding exclusion of live witness testimony not a violation of prisoner's due process, and if anything, harmless error); *Dokes v. Scibana*, No. 05-1404, 2006 WL 1892592, at *4 n.7 (W.D. Okla. July 10, 2006) (finding any alleged due process violation premised on a denial of the right to present live witness testimony is without merit).

Accordingly, the fact that the witness Applicant requested was not allowed to appear at the hearing due to security reasons or that SR Mottaghi may have spoken to a different

"Mendoza in D Unit" is not a due process violation. *See Muhammad v. Wiley*, No 01149, 2009 WL 2615377, at *4 (D. Colo. Aug. 25, 2009) (finding alleged denial of witness for disciplinary hearing was at most harmless error, and concluding no due process violation when applicant proceeded with disciplinary hearing without any witness); *Miskovsky v. Parker*, No. 05-1436, 2007 WL 4563671, at *11 (W.D. Okla. Dec. 21, 2007) (citing *Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991)) (The scope of a prisoner's right to call and confront witnesses and present documentary evidence "is committed to the sound discretion of prison officials who must exercise their discretion on an individualized basis").

Applicant also contends he also asked his staff representative to "interview three witnesses by the names of Pollender, . . . Korn, . . . and Bartsch" and asserts that SR Mottaghi did not interview these witnesses. (Appl. at 9.) There is no mention of these inmates at the hearing and there is no documentation that Applicant made this interview request.[9] (*See* DHO Report.) Applicant has represented that these inmates may have been able to testify that "Officer Medina did not follow the chain of custody by not sealing the urine specimen cup in my presence or by placing it in the bag and then sealing the bag in my presence." (Appl. at 8.)

As previously discussed in Section III(A), the undisputed evidence shows that the BOP number on Applicant's actual urine specimen and the number on the National Toxicology Laboratory report are the same thus satisfying the "some evidence" standard of *Hill* in support of

---

[9] In his administrative review, filed July 30, 2008, Robert E. McFadden, BOP Regional Director, also found that "there is no evidence in the record that you requested any additional witnesses as you now claim." (Appl. at 10.)

the DHO's determination.  Further, there was evidence that the chain of custody form bore at least the beginning of Applicant's signature, attesting to the fact that he provided the specimen and that the container was sealed with a tamper proof seal in his presence.  (Traverse at 4.) Applicant apparently never mentioned the absence of potential inmate witnesses Pollender, Korn or Bartsch at the hearing or requested their appearance as witnesses from the DHO.  Applicant's assertion that he was denied the right to call witnesses at his hearing is not supported by the record.

Applicant also claims he was not given the opportunity to present documentary evidence in his defense because he requested the chain of custody form and the laboratory report prior to the hearing and alleges he "was denied access to them under the guise of the safety and security of the instituion [sic]."  (Appl. at 4.)  The DHO allowed Applicant to view the requested documents during his DHO hearing, however Applicant avers that the viewing "was so brief that [he] was not able to fully evaluate or conclude that it was a lab report."  (*Id.* at 9.)  Applicant also asserts that his staff representative did not receive the documents prior to the hearing as required by 28 C.F.R § 541.14(b)(2), although the evidence refutes this assertion.  (Traverse at 7.) Although it is not entirely clear due to the differing language in the Application and the Traverse, it appears Applicant relates this assertion to Claim Six in the Application, which alleges Applicant was denied the right to have a "staff representative to help him prepare for his hearing."  (*See* Appl. at 6; Traverse at 14.)

Further, Applicant contends that he was unable to review and use the documents effectively during the hearing because he was handcuffed and not allowed to bring his reading

glasses to the hearing due to security reasons. (Traverse at 11, 28–29 and Exs. 5 and 8.) There is no showing in the record that Applicant raised the issue during the hearing that he needed reading glasses, and when asked if he was ready to proceed with the hearing, he answered that he was ready. (DHO Report at 1.) This new assertion was not made as part of Applicant's Application although it does appear in certain of his administrative appeals.

While denying Applicant the right to present documentary evidence at a disciplinary hearing can rise to a due process violation, *see Young v. Kahn*, 926 F.2d 1396, 1402 (3d Cir. 1991) (finding a violation of due process where prison official failed to produce a requested document at prisoner's disciplinary hearing), Applicant does not cite to and this court finds no law to support the assertion that Applicant had a constitutional right to have the requested documents prior to his DHO hearing. Section 541.14(b)(2) states that "if the case is ultimately forwarded to the Disciplinary Hearing Officer, the DHO shall give a copy of the investigation and other relevant materials to the inmate's staff representative for use in presentation on the inmate's behalf." The DHO report indicates that SR Mottaghi represented she had "reviewed the DHO packet documentation and spoken to the inmate. Ms. Mottaghi states that she believes inmate Mendoza has been afforded all his rights and is ready to proceed with the hearing." (DHO Report at 1). Further, the DHO report states, "the DHO allowed you to see and review the lab report during the hearing." (*Id.*)

It appears that SR Mottaghi received the material prior to the hearing, however even if Applicant's staff representative did not receive all the materials this alone would not violate Applicant's due process. Failure to follow the provisions of § 541.14(b)(2) does not

automatically constitute a due process violation. *Stanko*, 2009 WL 1066021, at *6 (holding a

violation of 541.14(b)(2) "by itself, is not cause for relief"). "If the alleged regulatory violations

result in no prejudice, then there is no violation of due process." *Id.*

It is not disputed that Applicant, his representative, and the DHO all saw, reviewed and

considered the laboratory report and the chain of custody forms at the DHO hearing. In fact, the

DHO states that she relied on the "[w]ritten report of the National Toxicology Laboratories, Inc.,

[the] Chain of Custody for Drug Analysis form [and the] Memorandum from HSA staff

(Physician Assistant)" in making her findings. (DHO Report at 2.) There is no indication that,

had Applicant seen the case file documents ahead of the hearing that the outcome of the hearing

would have been any different. Applicant was obviously present at the collection of the urine

sample and placed his urine into the numbered jar. He also was personally privy to exactly what

was done or not done by CO Medina in his presence. Applicant admits he signed portions of the

chain of custody form and therefore could quickly ascertain which areas were not filled in by

himself. Applicant's defense was not based on disproving the laboratory test results, so not

being provided with that document ahead of time could not possibly create prejudice. Applicant

instead made his case to the DHO that the chain of custody of the urine sample was flawed and

the evidence, therefore, unreliable. The DHO found the evidence before her, even in light of

Applicant's additional information, to be more persuasive on the issue of Applicant's guilt than

Applicant's complaint of imperfect process.

Therefore, this court finds Applicant's due process rights were not violated during the course of the hearing and that his representative adequately represented his interests and his rights.

## IV.     CONCLUSION

In reviewing the merits of Applicant's claims, this court finds he is not entitled to relief pursuant to 28 U.S.C. § 2241.  No evidentiary hearing is required.  Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 18 U.S.C. § 2241 [Doc. No. 2] be **DENIED** and that this case be dismissed with prejudice.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the District Court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 20th day of August, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge